# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN


## NO. 03-02-00740-CV


**Amelia S. Gonzales, Appellant**

**v.**

**Texas Boll Weevil Eradication Foundation, Inc., Appellee**


**FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY**
**NO. 247,181, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING**


## M E M O R A N D U M   O P I N I O N


Amelia S. Gonzales appeals from a summary judgment rendered in favor of the Texas Boll Weevil Eradication Foundation, Inc., a nonprofit corporation, in its suit to collect unpaid assessments on her land for the years 1998 and 2001. Subject to referendum approval from the affected cotton growers, the Foundation is authorized to operate boll weevil and pink bollworm eradication programs and to assess the cotton growers within six statutory zones for the cost. *See* Tex. Agric. Code Ann. '' 74.101-.153 (West Supp. 2003). The Foundation sued Gonzales, who is a cotton grower subject to the Foundation=s jurisdiction, to recover the assessments levied against her for the years 1998 and 2001. Gonzales appeals from a summary judgment granted by the trial court in favor of the Foundation, arguing that the 1998 assessment was improperly imposed and that a genuine issue of material fact exists to defeat the motion.

She does not challenge the 2001 assessment. Because we conclude that summary judgment was properly granted by the trial court, we affirm the judgment.

**BACKGROUND**

In 1997, the Texas Legislature amended chapter 74 of the agriculture code to create the Foundation to manage, under the supervision of the Department of Agriculture, programs to aid in the eradication of the boll weevil and pink bollworm from cotton in the State of Texas. The parties agree that Gonzales is a cotton grower subject to assessments levied by the Foundation.

The Foundation levied assessments against Gonzales for the year 1998 in the amount of $43,587.18, and for 2001 in the amount of $28,455.98. Because she failed to pay the assessments, the Foundation filed suit, seeking recovery of both the 1998 and 2001 assessments. The Foundation then moved for summary judgment as to both assessments. In response to the Foundation=s summary judgment motion, Gonzales opposed only the 1998 assessment, urging that the assessment was wrongly calculated.

Gonzales further contended as an affirmative defense that she relied upon misrepresentations of the Foundation in her decision to plant cotton on a Askip-row@ basis instead of corn, and that the Foundation misrepresented the terms, conditions, and rules of the program. Although the Foundation objected to Gonzales=s summary judgment proof, it did not obtain a ruling on its objections. The trial court granted summary judgment in favor of the Foundation, awarding the assessments for both years in the amount of $72,043.16, attorney=s fees and costs in the amount of $1,791.54, and post-judgment interest.

**ANALYSIS**

2

By two issues, Gonzales challenges the propriety of the trial court=s order granting summary judgment for the 1998 assessment in favor of the Foundation. She urges first that the assessment is wrongly based on the acreage of all arable land on the farm when it should have been calculated on the actual acreage planted in the Askip-row@ method.[1] Thus, she contends that she should have been assessed on the basis of 1,133.58 acres actually planted in cotton by that method instead of the total arable acreage of 1,612.12 acres for which she was assessed. In her second issue, she contends that she is entitled to an offset for the damages she suffered because of her reliance on the negligent misrepresentations made by the Foundation.

The standard for reviewing a traditional motion for summary judgment is well established: (i) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law; (ii) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (iii) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Tex. R. Civ. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When a movant files a motion

---

[1] A skip-row planting method consists of a pattern of alternating rows of cotton and idle land throughout the field. Skip-row planting yields may vary from conventionally planted cotton. In its brief, the Foundation urges that an acre of skip-row cotton produces fiber at a rate equivalent to an acre of solid cotton, but neither party has adduced competent proof concerning the comparative production rates.

for summary judgment based on the summary judgment evidence, the court can grant the motion only when the movant=s evidence establishes, as a matter of law, all of the elements of the movant=s cause of action or defense, or disproves the facts of at least one element in the nonmovant=s cause or defense. *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995).

Once the movant establishes that it is entitled to summary judgment, the burden shifts to the nonmovant to show why summary judgment should not be granted. *See Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989). Because the trial court=s order does not specify the ground or grounds relied on for its ruling, we will affirm the summary judgment if any of the theories that the Foundation advanced are meritorious. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

The legislature has determined that the Foundation is authorized to collect the assessment as determined by criteria established by the commissioner[2] and approved by a referendum of cotton growers

---

[2] The statute provides:

(g)   . . . The amount of the assessment shall be determined by criteria established by the commissioner, including:

(1)   the extent of infestation;

(2)   the amount of acreage planted;

(3)   historical efforts to eradicate;

(4)   the growing season;

(5)   epidemiology;

(6)   historical weather conditions; and

eligible to vote in the eradication zone. Tex. Agric. Code Ann. '' 74.113(e), .114(d) (West Supp. 2003).

The Foundation notified Gonzales that the assessments were due and payable, and Gonzales failed to pay the amounts owed.[3] In its summary judgment motion and accompanying affidavits, the Foundation established that it is entitled to payment of the 1998 and 2001 assessments. It supported the motion with affidavits of (i) the Foundation=s chief financial officer, attaching as exhibits the legal notice of the assessment, invoices and statements for assessment, and the demand letters, and (ii) the Foundation=s attorney, demonstrating the Foundation=s entitlement to attorney=s fees and costs. By the legal notice and the demand letter, the Foundation advised Gonzales that the growers in the South Texas/Winter Garden

---

      (7)   the costs and financing of the program.

  (h)   The commissioner shall give notice of and hold a public hearing within the eradication zone regarding the proposed assessment referendum. Before the referendum, the commissioner shall review and approve:

      (1)   the amount of the assessment;

      (2)   the basis for the assessment;

      (3)   the time for payment of the assessment;

      (4)   the method of allocation of the assessment among cotton growers; . . . .

  (i)   The commissioner shall on a zone-by-zone basis set the date on which assessments are due and payable.

Tex. Agric. Code Ann. ' 74.113 (West Supp. 2003).

     [3] AThe foundation shall prepare and mail billing statements to each cotton grower subject to the assessment that state the amount due and the due date. The assessments shall be remitted to the foundation.@ *Id.* ' 74.113(k) (West Supp. 2003).

Zone voted to create the zone and approved the amount of the assessment of A$23.14 per land acre planted in cotton@ to be paid by cotton producers in the zone.

In her affidavit, Tina Ballard, the Foundation=s chief financial officer, provided business records showing the specific location of Gonzales=s farm, the total land acreage farmed, and the per-acre assessment amount Abased on land acres planted to cotton.@ Ballard attested that the assessments were determined to be due and owing by Gonzales and were calculated by the same methodology for all growers. In a supplemental affidavit, Ballard included a letter to cotton growers dated June 9, 1998, stating that the assessment rate is A$23.14 per land acre,@ and a legal notice describing the referendum process and the cost-sharing program based on A$23.14 per land acre planted in cotton.@ By its summary judgment motion, the Foundation demonstrated its entitlement to past due assessments in the amount of $72,043.16.

In response to the Foundation=s motion, Gonzales asserted two grounds to defeat the motion: first, that the manner of assessment was Aincorrect,@ and second, that Athe agents and representatives@ of the Foundation Aprovided erroneous information to [her], which information was relied upon . . . in deciding to either plant cotton or corn on the acreage which she farms.@ As summary judgment proof, Gonzales submitted her affidavit with letters to the Foundation and acreage reports to the federal government attached. In her affidavit, Gonzales averred

> In the crop year 1998, I was farming in Jim Wells County, Texas. My husband and I had spoken with representatives of the Boll Weevil Eradication Program before we made the decision as to the type of crop which we wanted to plantCeither cotton or corn. Due to the dry nature of Jim Wells County, we always plant on the skip-row basis. I asked Plaintiff=s representative whether I would be assessed on the basis of my planted acreage, or on the basis of the farm acreage. I was told that the assessment would only be based on

**6**

the amount of acres which I reported as being planted. In that year, I reported the acreage planted on a skip-row basis.

Gonzales then averred that she decided to plant cotton based on the representations made by the Foundation. She further testified that, upon receiving the 1998 notice of assessment, she and her husband, Roel Gonzales, notified the Foundation of the erroneous assessment, but they received no response. Appended to the affidavit are letters from Mr. and Mrs. Gonzales to the Foundation, complaining of unspecified representations from a Asupervisor@ along with reports to the Farm Service Agency of the United States Department of Agriculture of farm acreage reported on a skip-row basis.

By her first issue, Gonzales challenges whether the Foundation established its entitlement to summary judgment. She contends that the Foundation failed to establish that its calculation of acreage was correct. The Foundation responds that Gonzales=s conclusory statements are insufficient, as a matter of law, to raise a fact issue. We agree with the Foundation. The Foundation established that it is entitled to summary judgment, and Gonzales=s proof does not raise a genuine issue as to a material fact sufficient to defeat the Foundation=s entitlement to summary judgment.

Affidavits consisting only of conclusions are insufficient to raise an issue of fact. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (stating that A[c]onclusory affidavits are not enough to raise fact issues@); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). The affidavit must set forth such facts as would be admissible at a conventional trial on the merits, *see* Tex. R. Civ. P. 166a(f) (Aaffidavits . . . shall set forth such facts as would be admissible in evidence@), and must be direct, unequivocal, and controvertible. *Brownlee*, 665 S.W.2d at 112.

**7**

Here, the undisputed summary judgment evidence establishes that the assessments are and have been calculated on land acres planted in cotton. There is no evidence that the assessment has been calculated on the skip-row acreage method urged by Gonzales, which would allow fallow land between rows to be excluded from the calculation. The Foundation=s proof demonstrated that since the assessment had been established, it had been based on the gross size of fields planted in cotton, not on the net row acreage urged by Gonzales. Gonzales does not dispute that an assessment was owed for 1998. Nor does she challenge the 2001 assessment, which is calculated in the same manner as the 1998 assessment. That Gonzales Awas told@ that the assessment would only be based on the amount of acres she reported Aas being planted@ (i) does not contradict the Foundation=s calculation of acreage and (ii) is factually vague as to the nature of the statement and the identity of the person who allegedly made the statement, and conclusory as to the content of the statement.

In any event, Gonzales has adduced no competent proof that the acreage was incorrectly calculated. By merely reciting that she disagreed with the Foundation=s calculation and that it was erroneously based on what she Awas told@ and her reports to another agency,[4] she asserted nothing more than a conclusion. Her affidavit did not set forth such facts as would be admissible in evidence; the statements made in the affidavit lack the necessary factual specificity. Gonzales=s allegations concerning the unspecified statements of unidentified representatives of the Foundation are insufficient to create a fact issue on whether the 1998 assessment was calculated correctly. We overrule Gonzales=s first issue.

---

[4] An exhibit attached to an affidavit is not competent summary judgment evidence unless the exhibit is self-proving or the affidavit proves the exhibit to be true. Tex. R. Civ. P. 166a(f). Because no objection to the exhibits was made, we may consider the exhibits as evidence.

In her second issue, Gonzales urges that her response and affidavits[5] raise a material issue of genuine fact as to her affirmative defense that the Foundation negligently represented to her the terms and conditions of the program. She contends that the Foundation has a duty to use reasonable care to provide accurate information to customers. The Foundation responds that the issue is one of legal sufficiency and that Gonzales has failed to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to the elements of her defense.

When a plaintiff moves for a traditional summary judgment in an action in which the defendant has pleaded an affirmative defense, the plaintiff is entitled to summary judgment if it demonstrates that there is no material factual issue on the elements of the claim, unless the defendant comes forward with a showing that there is a disputed fact issue as to each element of the affirmative defense. *Id.*; *Amoroso v. Aldine Indep. Sch. Dist.*, 808 S.W.2d 118, 121 (Tex. App.CHouston [1st Dist.] 1991, writ denied). To be an effective bar to a plaintiff=s summary judgment, the affirmative defense must be included in the response to the summary judgment motion, along with proper proof. The plaintiff will prevail on its motion for summary judgment if the facts in issue on plaintiff=s claim are established and the affirmative defense alleged is insufficient in law. *Brownlee*, 665 S.W.2d at 112; *Vista Dev. Joint Venture II v. Pacific Mut. Life Ins. Co.*, 822 S.W.2d 305, 309 (Tex. App.CHouston [1st Dist.] 1992, writ denied). The affirmative

---

[5] Even if we consider the affidavit of Roel Gonzales, which was not presented to the trial court in response to the summary judgment motion, it is virtually identical to his wife=s affidavit and does not raise a fact question.

defense will be insufficient in law if a fact issue is not raised as to each element of such defense.  *Brownlee*, 665 S.W.2d at 112.  The defeat of a summary judgment by an affirmative defense, in which fact issues only need be raised, is carried  by a much lesser burden than seeking a summary judgment based on an affirmative defense, in which each element of the defense must be established as a matter of law.

Even if we assume Gonzales has asserted an affirmative defense, *see* Tex. R. Civ. P. 94 (reciting affirmative defenses), and not a counteraction, *see* Tex. R. Civ. P. 97, she has failed to come forward with the requisite showing that there is a disputed fact issue as to each element of the affirmative defense.  The elements of negligent misrepresentation are that:  a representation was made by a party in the course of business, or in a transaction in which he has a pecuniary interest; the party supplied Afalse information@ for the guidance of others in their business; the party did not exercise reasonable care or competence in obtaining or communicating the information; and the injured party suffered pecuniary loss by justifiably relying on the representation.  *Federal Land Bank Ass=n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Gonzales presented no evidence that any agent or representative of the Foundation negligently misrepresented that the assessment would be based on a skip-row method.  She has pointed to no information provided by the Foundation that was erroneous.  Because Gonzales failed to present competent proof on the exact nature of the representation, the circumstances under which the statement was made, in what respect the statement was false, or the manner in which the Foundation failed to exercise reasonable care, she failed to raise a fact issue as to any element of her affirmative defense.  Gonzales=s defense is based entirely on the assertion in her affidavit that she Awas told@ that the assessment Awould only

**10**

be based on the amount of acres which I reported as being planted@ and that, A[i]n that year, I reported the acreage planted on a skip-row basis.@ This leap of logic cannot sustain her burden in coming forward with evidence on the affirmative defense. Even viewing the summary judgment proof in a light most favorable to her, we hold that Gonzales has pointed to no proof that gives rise to a material fact issue as to any element of her affirmative defense. Gonzales=s second issue is overruled.

## CONCLUSION

We hold that the trial court did not err in granting summary judgment. Because the Foundation established its entitlement to summary judgment and Gonzales failed to raise a fact issue as to the elements of her affirmative defense, we affirm the trial court=s summary judgment in favor of the Foundation.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   April 17, 2003

**11**